UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DAVID L. GREENING,                    )
                                      )    NO. CV-02-5008-LRS
                    Plaintiff,        )
                                      )    **ORDER DENYING PLAINTIFF'S**
        -vs-                          )    **MOTION FOR SUMMARY JUDGMENT**
                                      )    **AND GRANTING DEFENDANT'S**
GARY FLETCHER, et al.,                )    **MOTION FOR SUMMARY JUDGMENT**
                                      )
                    Defendants.       )
                                      )

        **BEFORE THE COURT** is Plaintiff's Motion for Partial Summary Judgment on issues of liability (**Ct. Rec. 80**), and Defendants' Cross-Motion for Full Summary Judgment (**Ct. Rec. 98**). These motions came at issue without oral argument on April 23, 2007. After careful review of the pleadings submitted by both parties, including Plaintiff Greening's medical records, this Court finds that Defendants did not act with deliberate indifference to Plaintiff's serious medical needs, nor were they negligent in Plaintiff's medical care. No genuine issues of material fact exist, and Defendants are entitled to judgment as a matter of law.

**I.    BACKGROUND**

        Plaintiff David Greening is an inmate in the custody of the Washington State Department of Corrections, who was housed in the Washington State Penitentiary at the time period involved in the pro se prisoner's complaint. Plaintiff claims that DOC officials were

ORDER - 1

deliberately indifferent to his serious medical needs under the Eighth Amendment of the Constitution during the time period from 1998 through 2001.  Plaintiff Greening originally filed his Complaint in 2002, which the Court dismissed on the grounds that Plaintiff failed to exhaust his prison administrative remedies.  On September 20, 2005, the Ninth Circuit reversed and remanded the case on the single issue of exhaustion.[1]  In light of this lawsuit's history, the Court addresses Plaintiff Greening's claims on the merits.

On September 20, 2006, Plaintiff filed his Second Amended Complaint in this lawsuit.  In addition to alleging that Department of Corrections medical staff were deliberately indifferent to a serious medical need, Plaintiff asserts a state claim for negligence and malpractice on behalf of the same DOC officials.  The Defendants in this case are Ronald Fleck, M.D., a licensed medical doctor, and Physician Assistant Gary Fletcher, who were medical practitioners at the Washington State Penitentiary at the time of the events described in the Second Amended Complaint.

---

[1] Because this Court dismisses Plaintiff's Eighth Amendment claims on the merits, it declines to address the exhaustion of administrative remedies argument.  However, this Court notes that after the Ninth Circuit's opinion remanding the case at bar, the United States Supreme Court reaffirmed that inmates must not only fully exhaust administrative remedies, but also held that exhaustion must be completed in a timely manner consistent with prison policies. *Woodford v. Ngo, 126 S. Ct. 2378 (2006).*

ORDER - 2

Plaintiff claims that he first complained of gastrointestinal distress beginning in August 1998 and that prison officials failed to act. *See* Second Amended Complaint. While incarcerated within the Washington State Department of Corrections, each inmate has his or her own medical file, which documents each contact with medical staff, and the nature of each patient's complaint. *See* Defendant's Statement of Material Facts, Ct. Rec. 100-2. Plaintiff agrees that such records are kept. *See* Second Amended Complaint. Ct. Rec. 78 and its attachments.

In his motion for summary judgment, Plaintiff alleges that Mr. Fletcher, and to some extent Dr. Fleck, knew of Mr. Greening's abdominal pain, nausea, vomiting, and rectal bleeding, and "did nothing" about it for four months." Ct. Rec. 81 at 6. However, Plaintiff's medical records, some of which he has attached for the Court, vary somewhat from that account.

Plaintiff's medical records indicate that he first complained of gastrointestinal upset on August 7, 1998, but did not report any diarrhea or vomiting. Ct. Rec. 100- 2 at 2. He was currently receiving Ibuprofen for pain and this medication was changed as Ibuprofen can be a source of upset. *Id*.

Plaintiff Greening did not seek further medical attention for two months. On October 23, 1998, Plaintiff came to sick call[2] complaining of back pain and stomach pain that was worse between meals and at bedtime.

---

[2] In sick call, inmates can line up to see medical staff twice a day to report any medical concerns to staff.

ORDER - 3

Mr. Greening did not complain of or mention diarrhea or nausea. During the visit, Plaintiff was given Pepcid A.C. for stomach pain. *Id.* Mr. Greening was seen again by Physician Assistant Fletcher in the clinic on October 29, 1998, when he complained of nausea and vomiting, but did not complain of diarrhea or blood in his stool. *Id.* In response to those complaints, Mr. Greening was scheduled for an Upper GI test and given a medication that is used to coat the stomach in the event a patient has an ulcer. He was also given Pepcid A.C. and Phenegran, a prescription medicine, which is used to treat nausea. From the record, it appears Physician Assistant Fletcher suspected that Plaintiff Greening could have an ulcer as the Plaintiff had a history of ulcers.

According to Plaintiff Greening's medical file, he did not seek medical attention again until two months after that appointment [December 1998], in which Plaintiff sought to have his medications refilled. At the time, he did not complain of diarrhea or blood in the stool, but said he had GERD, (commonly known as heartburn-like symptoms). Mr. Fletcher re-ordered an Upper GI test, and tested Plaintiff's blood for a certain bacteria, H pylori, which is known to cause ulcers. *Id* at 6.

Physician Assistant Fletcher saw Plaintiff again at a WSP outpatient clinic on January 6, 1999, at which time Plaintiff complained of nausea and vomiting. At that visit, Plaintiff's stool first tested positive for the presence of blood. Plaintiff then reported having ongoing diarrhea. Because of these complaints, a variety of tests were ordered, including a barium enema test, blood work, and Upper-GI. The barium enema exam was

conducted three days later.  The results of these tests were then taken to Dr. Harri, a local doctor specializing in gastroenterology in the Walla Walla area.

According to his medical records, Mr. Greening was scheduled for a follow up appointment with Mr. Fletcher on January 21, 2007, but he failed to appear.  *See also* Declaration of Gary Fletcher at ¶10.  Mr. Greening had an Upper GI test performed on January 26, 1999, and a colonoscopy with a surgical consult were ordered.

On February 5, 1999, Mr. Fletcher saw Plaintiff Greening because he was refusing to drink the liquid, known as the barium prep, in order to cleanse the colon in preparation for the colonoscopy.  [Without such preparation, the colon cannot be visualized, rendering the test ineffective.]  Mr. Fletcher explained to the Plaintiff that he believed he had a serious medical condition, most likely Crohn's disease.  Mr. Greening refused to go through with the preparation for the colonoscopy, and checked out of the inpatient hospital at the Washington State Penitentiary.  Declaration of Fletcher at ¶11.  Plaintiff's medical chart shows that he left the hospital against the advice of medical staff.

On February 12, 1999, Dr Fleck again tried to convince Plaintiff to have the procedure.  When Plaintiff refused, Dr. Fleck had placed him in the inpatient unit at WSP in case a life threatening issue arose. Plaintiff then consented to surgery, including removal of a large portion of his bowel, (*See* Plaintiff's Motion for Summary Judgment, Ct. Rec. 81 at 8) to correct his gastrointestinal problems on February 25, 1999.  The

ORDER - 5

surgery  was performed by a specialist from Walla Walla at Walla Walla General Hospital.

Plaintiff's health improved after the surgery, and he gained 14 pounds.  Dr. Fleck saw Mr. Greening several times in March and April 1999 and throughout the summer of 1999 and was responsive to Plaintiff's concerns which consisted of occasional nausea, heartburn, and vomiting. Plaintiff also saw dieticians who attempted to assist him with his health.  From the record, it appears the WSP medical staff continued to work closely with Plaintiff about his concerns, including switching medicines and testing for a reoccurrence of Crohn's through 2001, the time period of the Second Amended Complaint.  *See* Defendant's Statement of Facts (citing to Plaintiff's medical file.)

## II.  LEGAL STANDARDS

### A. Summary Judgment Standard

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, (1986). To survive summary judgment, a plaintiff must establish at least a genuine issue of material fact on every essential element of his case in chief. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S. Ct. 2956 (1992); *Celotex*, 477 U.S. at

323. Only facts which bear on the outcome of the suit under the applicable law are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence creating the factual dispute must herald the existence of definite, competent, and admissible evidence fortifying the plaintiff's version of the truth. *Mesnick*, 950 F.2d at 822. Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice. *Vega v. Kodak Carribean Ltd.*, 3 F.3d 476, 479 (1st Cir. 1993). Summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992).

**B.  42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met:  (1) the defendant must be a person acting under color of state law, and (2) his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

**III.  DISCUSSION**

**A.  Plaintiff's Claim of Deliberate Indifference**

In order to succeed on a civil rights claim under § 1983 for inadequate medical treatment, Plaintiff must establish that Defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). This rule applies to "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). The deliberate indifference must be "purposeful," *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997), and "substantial" in nature. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1996); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 525 (9th Cir. 1998). Mere negligence in the provision of medical care does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 105-06; *see also Frost v. Agnos*, 152 F.3d 1123, 1130 (9th Cir. 1998). To demonstrate deliberate indifference, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991).

The Ninth Circuit has acknowledged that the deliberate indifference standard is a higher standard than gross negligence. *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989). The threshold state of mind requirement under the deliberate indifference standard is exceptionally stringent, and should be tested as under the "subjective recklessness" standard in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 838-840

1  (1994).

2      The "[u]nnecessary and wanton infliction of pain" upon incarcerated

3  individuals under color of law constitutes a violation of the Eighth

4  Amendment and is actionable under 42 U.S.C. § 1983. *Hutchinson v. United*

5  *States*, 838 F. 2d 390 (9th Cir. 1988). "Such indifference may be

6  manifested in two ways.  It may appear when prison officials deny, delay

7  or intentionally interfere with medical treatment, or it may be shown by

8  the way in which prison physicians provide medical care." *Id.* at 394.

9  However, "[m]ere negligence in diagnosing or treating a medical

10 condition, without more, does not violate a prisoner's Eighth Amendment

11 rights." *Id*.  "Medical malpractice does not become a constitutional

12 violation merely because the victim is a prisoner.  In order to state a

13 cognizable claim, a prisoner must allege acts or omissions sufficiently

14 harmful to evidence deliberate indifference to serious medical needs.  It

15 is only such indifference that can offend 'evolving standards of decency'

16 in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106.

17

18     In the case at bar, it is undisputed that Mr. Greening suffered from

19 a serious medical need satisfying the first prong under *Farmer*, 511 U.S.

20 at 825.  As the Plaintiff's medical records reflect and Defendants

21 readily acknowledge, Plaintiff had serious gastrointestinal problems,

22 most likely Crohn's disease, that necessitated major surgery on the

23 Plaintiff's colon as well as continued care and management.  Therefore,

24 Plaintiff easily demonstrates that he had a serious medical need.

25 However, the DOC Defendants have shown that they were responsive to

26

ORDER - 9

1  Plaintiff's medical needs.

2      Plaintiff cites to *Greeno v. Litscher*, 13 Fed. Appx. 370 (7th Cir.

3  2001), an unpublished decision from the Seventh Circuit in support of his

4  contention that he has stated an Eighth Amendment violation.  However,

5  the *Greeno* case is easily distinguishable from Plaintiff Greening's fact

6  pattern.  In the Seventh Circuit case, the prisoner's complaint alleged

7  that he suffered from stomach pains and vomiting of blood for over two

8  years, that prison medical staff told him to take the antacids and "live

9  with" his problem, that excessive use of antacids caused him to become

10  chronically constipated, and that instead of immediately sending him to

11  a specialist, the medical staff gave prisoner improper laxatives.  The

12  Court found that the record in that case was sufficient to suggest to

13  even a lay person that prisoner suffered a serious medical need, for

14  purposes of stating a claim under the Eighth Amendment of denial of

15  appropriate medical treatment.[3]

16

17      In Plaintiff Greening's case, however, the medical records

18  demonstrate that Plaintiff had numerous tests, and medical staff tried a

19  variety of medication to assist Plaintiff with what was first believed to

20  be stomach or gastric distress and was later identified as Crohn's

21  _____

22      [3]The *Greeno* case is further distinguishable because the Court

23  dismissed it at the motion to dismiss stage before a record could be

24  developed.  In the case at bar, the Court has Plaintiff's medical records

25  as well as the pleadings of the parties for a full picture of what

26  occurred.

ORDER – 10

disease.  Plaintiff's tests were reviewed by a specialist and his surgery was performed by a specialist who was not affiliated with the Department of Corrections.

Moreover, it appears that Mr. Greening was not always compliant with treatment, i.e. refusing to complete the preparation for a colonoscopy, in leaving the WSP hospital against medical advice, and initially refusing surgery.  However, even if arguendo in viewing the facts in the light most favorable to Plaintiff, Mr. Greening was compliant or did not initially refuse surgery, the record before this Court still does not support a claim of deliberate indifference.  In the Ninth Circuit, an important corollary to the fact that medical malpractice or even gross medical malpractice does not amount to an Eighth Amendment violation, is that a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983.  *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).[4]  As discussed below, Plaintiff cannot show malpractice or negligence on the part of either Defendant.  It appears that Plaintiff disagrees with or is dissatisfied with the medical care he received which does not state a claim for relief

_____

[4] The Ninth Circuit has also applied this principle to disputes between physicians, so that even a difference of medical opinion between doctors over medical treatment does not amount to deliberate indifference to serious medical needs.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

ORDER - 11

under the Constitution.  *See e.g., Simmons v. Hambly*, 14 Fed. Appx. 918 (9th Cir. 2001).

Plaintiff acknowledges in his motion for summary judgment that "the materiality requirement [of the summary judgment standard] provides only those facts that might affect the outcome of a suit under governing law" will preclude the entry of summary judgment." *Cline v. Ind. Maintenance and Construction*, 200 F.3d 1223 (9th Cir. 2000).  In this instance, there are no facts as alleged that might affect the outcome of the lawsuit under governing law, and the Defendants are entitled to judgment as a matter of law.   Therefore, Plaintiff's Eighth Amendment claims are **DISMISSED WITH PREJUDICE.**

**B.  Plaintiff's Claims of Medical Negligence**

To establish a claim for breach of the standard of care in Washington, Plaintiff must show that "the health care provider failed to exercise the degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class, to which he belongs in the State of Washington, acting in similar circumstances."   RCW 7.70040(1).   Medical testimony necessary to establish the requisite causal relationship must be definite enough to establish that the act complained of probably or more likely than not caused the subsequent injury or disability."  *Orcutt v. Spokane County*, 58 Wn.2d 846 (1961).  As the prison officials argue, Plaintiff has not submitted any evidence from a competent medical professional to substantiate or even suggest that Defendants were negligent by failing to

comply with the standard of care practiced by the medical community in the State of Washington. However, all of the federal claims having been dismissed, this Court elects not to exercise supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. §1367. Therefore, Plaintiff's state claims are **HEREBY DISMISSED WITHOUT PREJUDICE.**

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 80**) is **DENIED.**

2.    Defendants' Motion for Summary Judgment (**Ct. Rec. 98**) is **GRANTED.** All of Plaintiff's federal claims are **DISMISSED WITH PREJUDICE.**

The District Court Executive is directed to file this order and provide copies to counsel, **ENTER JUDGMENT IN FAVOR OF DEFENDANTS**, and **CLOSE THE FILE.**

**DATED** this _27th_ day of September, 2007.


                                        *s/Lonny R. Suko*
                            _____
                                    LONNY R. SUKO
                            UNITED STATES DISTRICT JUDGE

ORDER - 13